Davis, J.
Whether or not a proprietor has abandoned his rights or his property, is usually a question of fact for a jury to answer, and the answer must depend primarily. upon an intention by the proprietor to abandon. This must be found from all the facts and circumstances of the case. But mere non-user is not ordinarily sufficient to establish the fact of abandonment; and both reason and authority suggest a doubt whether non-user for a period of statutory limitation, as in this case five years, would be proof of abandonment unless accompanied by a possession adverse to the proprietor. In this case, however, we may put aside consideration of the sufficiency of the findings by the county commissioners, and we may even waive all questions concerning the authority of the general assembly to declare property or rights to be abandoned upon such findings, because the case may be readily resolved upon another objection to the statute under which these proceedings were had.
The parenthetic provision of the statute, which controls this case was inserted by amendment, in an act passed April 11, 1884 (81 O. L., 135) and is as follows: “(But in any case, where a mill has become useless or has been destroyed, and has so remained for more than ten years, without any attempt to repair or rebuild the same, the mill-dam and water-rights and privileges belonging to the same shall be deemed abandoned and the right thereto as against the public health, con *132 venience and welfare, under this act, shall cease and be barred; and the commissioners may, under this act, without bargain or compensation, cause such mill-dam to be removed and the water course upon which it is located cleaned' out and improved, when an apportionment has been made, as herein-before stated.)”
By an act passed March 23, 1893 (90 O. L., 123), the period of limitation in the provision above quoted was changed from ten to five years; and so it has remained.
If it be conceded that “such mill-dam,” that is, a mill-dam existing under the conditions stated in this amendment, may be seized and destroyed by the county commissioners for the public welfare, yet it is apparent that so long as any value, however small, remains in the mill-dam and water rights, the taking of it “without bargain or compensation” is a violation of Article I., Section 19, of the Constitution of Ohio.
The argument is made that the constitution emanated from the people and that the welfare of the people is paramount to any private interest. Very true, but written constitutions have heretofore been framed chiefly to protect the weak from the strong and to secure to all the people “equal protection and benefit.” They have been constructed upon the theory that majorities can and will take care of themselves; but that the safety and happiness of individuals and minorities need to be secured by guaranties and limitations in the social compact, called a constitution. Hence, while it is declared in Article I., Section 19, of our Constitution, that private property shall be held *133 “subservient to the public welfare,” it is also declared that it shall ever be held inviolate and shall not be taken for the public use without compensation, in most cases compensation first to be made in money.
It is regrettable that there should be an apparent necessity for re-stating such familiar principles; but there seems to be a growing disposition to legislate, by ordinance and by general statute, regardless of constitutional limitations', thus imposing upon the courts the odium of declaring them to be unconstitutional.
A further contention is made that the plaintiff in error has lost all of his property rights “as against the public health, convenience and welfare,” because of non-user and failure to repair for more than five years, when the amendment to Revised Statutes, Section 4567c, declares that in such case “the mill-dam and water-rights and privileges belonging to the same shall be deemed abandoned, and the rights thereto as against the public health, convenience and welfare, under this act shall cease and be barred.” Waiving, as we did at the outset, any question as to the legislative power to so declare, and granting the contention to be true as a general proposition, it seems to us that there are at least two answers to it in the present case.
This is not a prosecution for nuisance, nor a proceeding to abate a nuisance. It is a proceeding under Sections 4567a, 4567& and 4567c of the Revised Statutes for the improvement of a living stream by the removal of a mill-dam alleged to hinder the free passage of water in the natural *134 channel of such stream. In Section 4567c, excepting of course the amendment in parenthesis which is now under review, the legislature recognized the constitutional right of the owner to compensation and damages. The removal of a dam under this act is called an improvement for the public welfare. It is declared that “if they (the commissioners) find that such improvement and removal will be conducive to the public health, convenience or welfare they shall report their findings in writing and order the auditor to enter the same on their journal, and they shall at once proceed to negotiate with the owner or owners for the purchase of such mill-dam or mill-dams of all rights, title and interest they may have to or in the same,” etc. Elsewhere in the same section provision is made for ascertaining and apportioning compensation and damages upon failure to agree with the owner or owners, or upon objections by the petitioners.
Then follows this amendment which attempts to foreclose inquiry into the fact of abandonment and declares that upon the mere non-user and failure to repair for more than five years “the same shall be deemed abandoned” and the commissioners are authorized to proceed “without bargain or compensation” to remove the dam and to clean out and improve the water course.
There can be no doubt that the dam and water rights belonging to the plaintiff in error could have been removed in the improvement of the living stream for the public welfare, just as in the other cases provided for in these sections, because all private property is held “subservient to the public *135 welfare,” whether it has been abandoned or not; but “private property shall ever be held inviolate,” (Const., Art. I., Sec. 19), and when the owner is compelled to yield his rights to public use he is guaranteed compensation. Therefore, when the legislature undertook to authorize the commissioners to seize the property of the plaintiff in error “without bargain or compensation,” it went entirely beyond the limitations of the constitution.
Again, the defendants in error are estopped by their own answer in this case, from making this contention. 31 Cyc., 87-90. Answering the plaintiff’s petition they expressly admit the first allegation therein, namely, “that the plaintiff is the owner of the mill-dam and water rights sought by the proceedings and orders mentioned and referred to in his petition to be destroyed,” etc. If he is still the owner of the dam and water rights, he has not lost them. If the property is of any value whatever whether a mill or a million, he is entitled to compensation under the constitution. Therefore the amendment of Revised Statutes Section 4567c in parenthesis, passed April 11, 1884 (81 O. L., 135) and itself amended March 23, 1893 (90 O. L., 123) is null and void because it is in conflict with Article I., Section 19, of the constitution.
The judgment of the circuit court and the judgment of the court of common pleas are reversed and injunction made perpetual as prayed in the plaintiff’s petition.

Reversed.

Spear, C. J., Shauck, Price, Johnson and Donahue, JJ., concur.